Todd Hamilton TYNES

v.

SHONEY'S INC.

Civ. No. JFM–94–574.

United States District Court, D. Maryland.

Nov. 7, 1994.

---

**14.** Ty Pruitt and PRMMI agree that this contract is governed by New Jersey Law, the place where the contract was finalized.

Norris C. Ramsey, Gary N. Bowen, Baltimore, MD, for plaintiff.

Dale B. Garbutt, Stephen D. Shawe, Shawe and Rosenthal, Baltimore, MD, for defendant.

## MEMORANDUM

MOTZ, District Judge.

Todd Tynes has brought this action against his former employer Shoney's restaurant. He asserts claims for battery, defamations, and wrongful discharge.[1] Discovery

---

1. Plaintiff initially characterized his defamation claim as one for "false lights" invasion of privacy. However, at the summary judgment hearing he acknowledged that since the allegedly defamatory nonverbal conduct occurred before a narrow audience, the claim is more properly considered as one for defamation. *See, e.g., Cambridge Title Co. v. Transamerica Title Ins. Co.,* 817

has been completed, and defendant has filed a motion for summary judgment.

### I.

According to plaintiff, on the morning of May 27, 1993, his supervisor, Larry Kroeck, began to verbally and physically accost him while he was unloading boxes in the storage room at Shoney's restaurant located in Woodlawn, Maryland. At the time of the altercation, plaintiff was employed as a kitchen manager, hired on an at-will basis. Kroeck was employed as the general manager of the Woodlawn restaurant.

As testified to at deposition, plaintiff's version of his confrontation with Kroeck was as follows:

Q. Okay. What happened?

A. He [Kroeck] came in, he was frustrated because I had to call him in early because the cooks didn't show up, he was acting crazy, he was yelling and screaming, so I went into the storage room to unload some stock, he come in there and he was screaming at the top of his voice, he was in my face and saliva was coming through his mouth and I backed up and [he] grabbed me and he shoved me. I told him that I was going to file a criminal complaint against him and he said, well, you file what you want. If you do, then you no longer have a job here. So I said, well, I'm going to report this to Mark Powell [Kroeck's supervisor].

Q. Did you ever report it to Mark Powell?

A. Yes, I did.

Q. When?

A. I called Mark Powell over the phone in Shoney's. I was unable to reach him. I talked to Rick Stone's wife who told me to talk to Mark Powell. At that time the police officers come through the door and talked to Larry. They asked me to leave the premises and I did so.

Q. Okay. Did they arrest you, the police?

A. No, they did not.

Q. They didn't put handcuffs on you or anything?

A. No.

Q. Did they touch you in any fashion?

A. No.

### II.

■ Any injuries that plaintiff suffered as a result of the alleged battery are covered by Maryland's Workers' Compensation Act ("WCA"). Md.Labor & Employment Code Ann. § 9–101 et seq. (1991 Repl.Vol.). Compensation under the WCA is an employee's exclusive remedy unless the injury is shown to be the result of "the deliberate intent of the employer to injure or kill the covered employee." WCA § 9–509(d). If an employee demonstrates such an intent, he has an option to file his claim under the WCA or bring a common law tort action for damages. *Id.*

■ Here, defendant can be said to have had the deliberate intent to injure plaintiff only if Kroeck's action of shoving plaintiff can be attributed to defendant.[2] Maryland law is not as clear as it could be on this point. On the one hand, the Court of Appeals has stated that in order for a plaintiff to attribute a fellow employee's intentional conduct to his employer it is not necessary that the plaintiff establish that the fellow employee was the

---

F.Supp. 1263, 1278 (D.Md.1992) (quoting Restatement (2nd) of Torts § 625D, comment a).

**2.** After the incident occurred defendant investigated it and upheld Kroeck's firing of plaintiff and did not fire Kroeck himself. Plaintiff argues that because of this, defendant can be said to have ratified Kroeck's conduct. Although somewhat appealing on its face, this contention is fundamentally flawed. If after investigating the incident, defendant had concluded that plaintiff's version of the event was correct, *i.e.*, that Kroeck had shoved him and called the police without justification, and still confirmed Kroeck's actions, plaintiff's ratification theory would be viable. It cannot be inferred, however, that defendant reached this conclusion from the mere fact that defendant did not rehire plaintiff or fire Kroeck. To the contrary, it is at the very least equally and reasonably inferable that defendant did not reverse Kroeck's decision after its investigation because it credited Kroeck's version of what had happened. If it did so, it did not ratify Kroeck's wrongful conduct, but rather found that no wrongful conduct on the part of Kroeck had occurred.

# 333

alter ego of the employer. *See Federated Dept. Stores, Inc. v. Le,* 324 Md. 71, 86, 595 A.2d 1067, 1074 (1991). On the other hand, the court simultaneously suggested that not every intentional act of wrongdoing of a fellow employee can be attributed to the employer so as to allow a plaintiff to circumvent the exclusivity of his remedy under the WCA. Thus, the court stated: "We do not mean to imply, however, that an employer's tort liability to an employee under § 44 [the predecessor to WCA § 9–509(d) ] is as broad as the employer's liability to third-parties for intentional torts." *Id.*

Complicating matters further is the fact that defendant might not have been liable for Kroeck's allegedly wrongful conduct even if plaintiff were a non-employee third party. As manager of the Woodlawn restaurant, Kroeck was, of course, defendant's agent. However, he was not employed in a position in which he could reasonably be expected to come into potentially hostile confrontations with others. *Compare Sawyer v. Humphries,* 322 Md. 247, 587 A.2d 467 (1991) (off-duty state police officer deemed to be acting within the scope of his employment in altercation with motorist); *Market Tavern, Inc. v. Bowen,* 92 Md.App. 622, 610 A.2d 295 (1992), *cert. denied,* 328 Md. 238, 614 A.2d 84 (1992) (same as to security guard at tavern). Moreover, according to the plaintiff's version of what occurred, Kroeck acted in a crazed and entirely unpredictable manner. Thus, this case is quite close to *LePore v. Gulf Oil Corp.,* 237 Md. 591, 207 A.2d 451 (1965), where a debt collector was found not to be acting within the scope of his employment when he assaulted a person from whom he was attempting to collect a debt.

■ Assuming, however, that Kroeck's conduct could be attributed to defendant if plaintiff had not been Kroeck's fellow employee, *Federated Dept. Stores* strongly suggests that this alone would not be sufficient to meet the "deliberate intent to injure" test of section 9–509(d). Ultimately, it will be the responsibility of the Maryland Court of Appeals to delineate the factors that determine when a fellow employee's intentional wrongdoing can be attributed to the employer. Such factors would seem to include, however, (1) the status of the employee in the corporate (or other) hierarchy of the employer; (2) the extent to which his wrongful conduct could be expected to flow from his position; (3) the nature of the wrongdoing; and (4) any prior notice that the employer had of the employee's proclivity to do wrong. Applying these factors to the summary judgment record here, the test of section 9–509(d) has not been met. Although Kroeck was Tynes' supervisor, he was only one of hundreds of restaurant managers in defendant's chain of command. As indicated above, he was not in a position where defendant would reasonably expect that he would become involved in violent altercations with his employees. Further, plaintiff's own description of the incident reflects that Kroeck's alleged conduct was bizarre and unpredictable. Finally, there is nothing in the record to suggest that defendant was on notice that Kroeck was prone to such conduct.

## III.

■ Plaintiff's defamation claim also raises a "scope of employment" issue.[3] If, as plaintiff's description of the incident suggests, Kroeck called the police in the heat of the moment as part of a personal vendetta against plaintiff, it is at least arguable that his conduct was not reasonably expectable and otherwise was not in furtherance of defendant's business. *See generally LePore v. Gulf Oil Corp., supra.* I need not decide that issue, however, because I find, when viewing the evidence most favorably to plaintiff, that he has failed to demonstrate any "false and defamatory communication"—one of the elements of a defamation claim. *See generally Metromedia, Inc. v. Hillman,* 285 Md. 161, 172, 400 A.2d 1117, 1123 (1979).

■ A defamatory statement can, of course, be made by a non-verbal act. In *General Motors Corp. v. Piskor,* 277 Md. 165, 171 n. 2, 352 A.2d 810, 814 n. 2 (1976), a gesture made by one of defendant's supervi-

---

3. WCA § 9–509(d) is not relevant to plaintiff's defamation claim since damages caused by defamation are not compensable under the WCA.

*See generally Belcher v. T. Rowe Price Found., Inc.,* 329 Md. 709, 745, 621 A.2d 872, 890 (1993).

sors—waving a finger in front of plaintiff—was found sufficient to convey to plaintiff's fellow employees a defamatory imputation of theft. Similarly, in *Caldor, Inc. v. Bowden,* 330 Md. 632, 654, 625 A.2d 959, 970 (1993), the court found that leading the plaintiff through a store in handcuffs would lead any reasonable observer to conclude that plaintiff had committed an unlawful act. Here, however, it is undisputed that the plaintiff was not placed in handcuffs or otherwise taken in custody. To the contrary, according to his own deposition testimony, plaintiff simply left the restaurant after the police officer asked him to do so. This in and of itself conveyed no defamatory meaning. The mere fact that a person leaves the scene of an altercation upon request does not suggest that the person has committed a wrong, but simply that he is following a sensible direction to extricate himself from a heated situation.[4]

### IV.

■ Maryland recognizes a cause of action for abusive discharge of an at-will employee only "when the motivation for the discharge contravenes some clear mandate of public policy." *Adler v. American Standard Corp.,* 291 Md. 31, 46, 432 A.2d 464, 473 (1981). Here, plaintiff alleges he was discharged in retaliation for having told Kroeck that he was going to file criminal charges for battery against Kroeck. Plaintiff alleges that Kroeck's firing of him contravened the public policies of Maryland (1) to encourage the reporting of criminal activity to legal authorities and to an employee's supervisor, (2) to permit the unrestrained filing of criminal and civil suits and (3) to protect a person's bodily integrity.

■ The first two policies do not support a wrongful discharge claim. In *Watson v. Peoples Sec. Life Ins. Co.,* 322 Md. 467, 588 A.2d 760 (1991), the Court of Appeals squarely stated that wrongful discharge claims cannot be maintained to vindicate wholly abstract policies such as "the right of redress." *Id.* at

477, 588 A.2d at 765. An employer of a discontented at-will employee cannot be required to face the choice between retaining the employee or risking an abusive discharge suit. *Id.* *Watson* does, however, lend some support to plaintiff's contention that the public policy in favor of protecting bodily integrity is sufficiently clear and strong that an employee's discharge that violates that policy is actionable.

*Watson* involved a plaintiff who had been discharged allegedly in retaliation for having filed sexual harassment claims in a suit for assault and battery against her employer. The court found that, in accordance with its prior holding in *Makovi v. Sherwin–Williams Co.,* 316 Md. 603, 561 A.2d 179 (1989), plaintiff's claim was not cognizable to the extent that it was based upon alleged retaliation for having filed sexual harassment claims. The public policy for such retaliation was articulated by a statute which provided its own remedial scheme. However, the court went on to hold that plaintiff's wrongful discharge claim was viable to the extent that it was based upon retaliation for having filed · the assault and battery suit since "[l]ong antedating Title VII and the [Maryland Fair Employment Practices] Act, public policy, as manifested in civil and criminal law, provided sanctions against attempted and consummated harmful and offensive touching of the person whether or not sexually motivated." *Watson,* 322 Md. at 485, 588 A.2d at 769. Reasoning that the anti-discrimination statutes do not supersede that policy but merely reinforce it in a particular context, the court found that the remedial schemes established by Title VII and the MFEPA do not exclude a common law action for a wrongful discharge allegedly made in retaliation for vindicating the long established public policy against offensive touching.

Defendant seeks to distinguish the present case from *Watson* on the ground that here Kroeck's alleged touching of plaintiff had no

---

4. Furthermore, as defense counsel noted during oral argument, unfortunately it is not an uncommon occurrence for potentially volatile disputes to arise in places of public accommodation or other commercial establishments. It would be extremely unsound as a matter of public policy to

subject the owner of the establishment to civil liability every time the police are called to prevent a conflagration from erupting. If any arrest is actually made, of course, a far different situation is presented. That, however, did not happen here.

sexual component to it. This distinction is unpersuasive. Although the sexual harassment aspect of the battery claim in *Watson* may have influenced the Court of Appeals' judgment, the Court squarely stated that the public policy upon which it was relying to support the wrongful discharge action was the discouragement of wrongful touching, "whether or not sexually motivated." 322 Md. at 485, 588 A.2d at 769.

A second distinction drawn by defendant is, however, sound. In *Watson* plaintiff was discharged several days after she had filed her lawsuit. In contrast, here plaintiff was fired immediately after, indeed in the course of, his altercation with Kroeck. The discharge was effected in the heat of the moment by the very person with whom plaintiff was arguing, not as the result of a deliberative decision-making process in which other employees of defendant were involved.[5] To apply *Watson* in these circumstances would be to extend its holding far beyond that which I believe was contemplated by the Court of Appeals. Moreover, to do so would violate the Court of Appeals' broad mandate that wrongful discharge actions should be entertained "*only with the utmost circumspection.*" *Adler*, 291 Md. at 45, 432 A.2d at 472 (emphasis in original).

For these reasons, I find that defendant is entitled to the summary judgment that it seeks. A separate order granting its motion is being entered herewith.

---

5. Again, plaintiff contends that defendant ratified Kroeck's decision by not reversing it after investigating what had occurred. As indicated in footnote 2, *supra*, this contention fails. In order to prevail on his ratification claim, plaintiff would have to show that defendant concluded after its investigation that the events had transpired as plaintiff alleges and that he had been discharged solely because he had told Kroeck that he was going to bring criminal charges against him. Plaintiff has pointed to nothing in the record that comes close substantiating the allegation that defendant believed that this scenario is what, in fact, occurred.