537 A.2d 1173

**Lawton Edward EWING**

**v.**

**KOPPERS COMPANY, INC.**

**No. 33, Sept. Term, 1987.**

Court of Appeals of Maryland.

March 7, 1988.

Motion for Reconsideration Denied April 6, 1988.

**46**

Eldridge, J., concurred in result.

William F. Gosnell, Baltimore, for appellant.

Anthony W. Kraus and Gil A. Abramson (Semmes, Bowen & Semmes, on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and JAMES F. COUCH, JR., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

McAULIFFE, Judge.

Resolution of this appeal requires consideration of the scope of federal pre-emption in the field of labor law, as well as consideration of the doctrine of mutual collateral estoppel.

The Petitioner, Lawton Edward Ewing, was hired by Koppers Company, Inc. (the employer) in 1961. He was a member of the International Association of Machinists and Aerospace Workers, Lodge 1784 (the Union), and the terms and conditions of his employment were fixed by a collective bargaining agreement. His employment was terminated on March 28, 1983, and his employer assigned a number of reasons for that action, including his attendance record and his physical inability to work. Petitioner promptly filed a grievance, alleging that he had been terminated without just cause [1], and seeking reinstatement, back pay, and restoration of fringe benefits. The required pre-arbitration pro-

---

1. Section 16.0 of the agreement between the employer and the union provided that "[n]o discharge shall be made without just cause." That section further required that any protest of a discharge be pursued through the specific grievance procedure established by Article XIX. If not resolved at that level, the dispute was to be submitted to "final and binding" arbitration in accordance with Article XX.

cedures did not produce a resolution of the dispute, and the grievance was ultimately submitted to an arbitrator selected through the procedures of the Federal Mediation and Conciliation Service. Following two days of hearings and the submission of briefs by each party, the arbitrator filed, on May 11, 1984, a 28 page opinion and award, finding that the employer had just cause to terminate the Petitioner, and denying the grievance. Shortly thereafter, on May 29, 1984, Petitioner filed a civil action against the employer in the Circuit Court for Baltimore City, alleging that he had been terminated in retaliation for an earlier filing of a worker's compensation claim. He sought compensatory damages for past and future loss of wages, pension rights, and fringe benefits, and punitive damages for the alleged abusive discharge.

The employer filed a motion to dismiss or for summary judgment, contending that: 1) a statute making it a criminal offense to discharge an employee solely because he files a worker's compensation claim [2] was intended by the Legislature to provide an exclusive remedy; 2) no cause of action exists under Maryland law for abusive discharge of an employee whose rights are protected by contract; and 3) the pre-emptive effect of § 301 of the Labor Management Relations Act [3] foreclosed the bringing of the action, or in the alternative, its successful prosecution.

Initially denied, the motion was reconsidered after the Supreme Court decided *Allis–Chalmers Corp. v. Lueck*, 471 U.s. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Judge Thomas Ward held that a cause of action for abusive discharge was available to a contract employee, but that under the facts of this case the state claim was pre-empted by § 301 of the Labor Management Relations Act. Judge Ward entered summary judgment in favor of the employer. An appeal followed, and we issued the writ of certiorari on

**2.** Maryland Code (1957, 1982 Repl. Vol.) Article 101, § 39A.

**3.** Chapter 120, Title III, § 301, 61 Stat. 156, enacted June 23, 1947, and codified at 29 U.S.C. § 185.

our own motion before consideration by the Court of Special Appeals.

In addressing the question of whether a tort claim for abusive discharge may be brought by one who enjoys the protection of an employment contract, the employer points out that in *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), we discussed the recognition of this cause of action only in the context of an at will employee. We there concluded that:

> Maryland does recognize a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy....

*Id.* at 47, 432 A.2d 464.

The employer suggests that there is no need to recognize a tort in favor of those employees who are fortunate enough to enjoy contractual or other protection. It is true that we noted in *Adler* the particular vulnerability of at will employees, and further noted that the last census had disclosed that a majority of American workers do not have the job security provided by collective bargaining agreements or civil service regulations. *Id.* at 42, 432 A.2d 464. But that was only one of the factors considered by the Court. As Chief Judge Murphy pointed out for the Court, "society as a whole has an interest in ensuring that its laws and important public policies are not contravened." *Id.* The tort action as we have recognized it is not intended to reach every wrongful discharge. It is applicable only where the discharge contravenes some clear mandate of public policy. Thus, the public policy component of the tort is significant, and recognition of the availability of this cause of action to all employees, at will and contractual, will foster the State's interest in deterring particularly reprehensible conduct. Moreover, it would be illogical to deny the contract employee access to the courts equal to that afforded the at will employee. We hold that a cause of action for abusive discharge exists in favor of employees who serve under contract as well as those who serve at will.

■ Discharging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy. The Legislature has made a strong statement to that effect in making such conduct a criminal offense, and our perception of the magnitude of the public interest in preserving the full benefits of the worker's compensation system to employees, and deterring employers from encroaching upon those rights, is equally strong. The question, then, is not whether a cause of action for abusive discharge generally exists in favor of union employees—it does. The question we must resolve is whether federal pre-emption principles preclude recovery in this case.

Several different forms of pre-emption may be applicable in the area of labor law.[4] We are concerned here with the pre-emptive effects of § 301 of the Labor Management Relations Act. Section 301, in pertinent part, states:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties ...

29 U.S.C. § 185(a).

In *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 450–51, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Supreme Court held that § 301 accomplishes more than simply conferring jurisdiction on federal courts to hear suits claiming violations of collective bargaining agreements. In *IBEW, AFL–CIO v. Hechler*, —— U.S. ——, 107 S.Ct. 2161, 2165, 95

---

4. For example, one form of pre-emption prohibits states from regulating conduct that is within the primary jurisdiction of the National Labor Relations Board. *San Diego Unions v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Another strain of pre-emption precludes state regulation of conduct that Congress intended to be unregulated and left to the control of the free play of economic forces. *Fort Halifax Packing Co., Inc. v. Coyne*, —— U.S. ——, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). Cases decided under these principles of pre-emption are not controlling in matters regarding the pre-emptive effect of § 301.

L.Ed.2d 791 (1987), the Court, quoting from *Lincoln Mills,* *supra,* 353 U.S. at 456, 77 S.Ct. at 917–18, stated:

Congress, through § 301, . . . authorized federal courts to create a body of federal law for the enforcement of collective-bargaining agreements—law "which the courts must fashion from the policy of our national labor laws."

The pre-emptive effect of § 301 was first addressed in *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 104, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962), where the Court held that federal law, and not state law, must govern in adjudicating § 301 claims. "The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute." *Id.* at 103, 82 S.Ct. at 576. The *Lucas Flour* Court went on to explain the need for this uniformity:

The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by the necessity of trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its interpretation.

*Id.* at 103–104, 82 S.Ct. at 576.

In *Allis–Chalmers, supra,* 471 U.S. at 209–13, 105 S.Ct. at 1910–12, the Supreme Court recently defined the area covered by § 301 and referred to in *Lucas Flour.* While the ordinary § 301 case is one in which a party expressly asserts that a provision in the collective bargaining agreement has been violated, *Allis–Chalmers* involved a state-law tort action brought by an employee against his employ-

er for bad faith handling of disability benefit payments due under the collective bargaining agreement.

> The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by re-labeling their contract claims as claims for tortious breach of contract.

*Id.* at 211, 105 S.Ct. at 1911.

The Court went on to point out that if state law were allowed to determine the meaning intended by parties of terms employed in the collective bargaining agreements, "[t]he parties would be uncertain as to what they were binding themselves to" and thus "it would be more difficult to reach agreement, and disputes as to the nature of the agreement would proliferate." *Id.*

The rule of § 301 pre-emption announced by the *Allis–Chalmers* Court is this: "[S]tate-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." *Id.* at 213, 105 S.Ct. at 1912. In determining whether a state tort action is pre-empted by § 301, analysis must focus on whether state law confers rights independent of any contract right or "instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.*

In applying this rule in *Allis–Chalmers*, the Court held that § 301 pre-empted the state tort. The employee had alleged that his employer and its insurance company "had

intentionally, contemptuously and repeatedly failed" to make disability payments due to him under the negotiated disability plan in violation of a Wisconsin law imposing a duty of good faith in handling insurance claims. The Wisconsin Supreme Court, in response to a pre-emption argument, found that this tort claim was independent of any contract claim. The Supreme Court disagreed. After first noting that the independence of the state tort was a question of federal and not state law, the Court also made the definition of the scope of a labor contract provision a question of federal interpretation. For example, the Supreme Court surmised that the state court had assumed that the only obligations the parties were bound to under the contract were those specifically articulated in the agreement. "The assumption that the labor contract creates no implied rights [i.e. of good faith] is not one that state law may make." *Id.* at 215, 105 S.Ct. at 1913. Thus federal law determined whether the employer in *Allis–Chalmers* was under a contractual duty to provide the payments in a timely fashion and whether its conduct breached that duty. The Court said that the Wisconsin state tort was pre-empted because "only that result preserves the central role of arbitration in our 'system of industrial self-government.'" 471 U.S. at 219, 105 S.Ct. at 1915 (quoting *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)).

In *IBEW, AFL–CIO v. Hechler, supra,* —— U.S. ——, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987), an employee brought a tort action against her union claiming the union had breached its duty to provide the worker with a safe workplace. The Court held that the worker's claim was not sufficiently independent of the collective bargaining agreement to withstand the pre-emptive force of § 301. In order to determine any liability on the part of the union, a court would first have to determine whether the collective bargaining agreement imposed any implied duty of care, and then the scope of the duty. Thus, "questions of contract interpretation . . . underlie any finding of tort liability" and the worker was

"precluded from evading the pre-emptive force of § 301 by casting her claim as a state-law tort action." *Hechler, supra,* ⸺ U.S. ⸺, 107 S.Ct. at 2168 (quoting *Allis–Chalmers, supra,* 471 U.S. at 218, 105 S.Ct. at 1915).

The United States Courts of Appeals addressing the issue of pre-emption of state retaliatory discharge claims have reached varying results. The principal decisions of the several circuits on this question have been collected and are discussed in *Lingle v. Norge Div. of Magic Chef, Inc.,* 823 F.2d 1031 (7th Cir.), *cert. granted,* ⸺ U.S. ⸺, 108 S.Ct. 226, 98 L.Ed.2d 185 (1987).

The question of federal pre-emption takes two forms in the case before us. First, does § 301 of the Labor Management Relations Act completely pre-empt the maintenance of a state action for discharge in retaliation for the filing of a worker's compensation claim? Second, if it was not the intent of Congress to give § 301 such a broad sweep, do established principles of federal pre-emption mandate that we afford preclusive effect to the resolution of issues by arbitration conducted in accordance with a collective bargaining agreement?

The issue of whether Congress intended absolute pre-emption of state tort actions in cases involving labor contracts is a difficult one. The Court in *Allis–Chalmers* made it clear that Congress intended to establish a broad, uniform, and paramount body of federal law that would exclusively govern the resolution of disputes arising out of labor contracts. At the same time, however, the Court recognized that the states retained a legitimate interest in areas such as the establishment of labor standards and the regulation of matters that could be the subject of collective bargaining, and that Congress did not intend to pre-empt those powers. Accordingly, the parties to a collective bargaining agreement are not free to "opt out" of legitimate state controls simply by agreeing to impermissible conditions and claiming federal protection through pre-emption. In *Allis–Chalmers,* therefore, the Supreme Court faced the question of whether a Wisconsin tort action for breach of

the duty of good faith conferred non-negotiable state law rights on employers or employees independent of any right established by contract, or whether evaluation of the tort claim was "inextricably intertwined with consideration of the terms of the labor contract." 471 U.S. at 213, 105 S.Ct. at 1912. Finding that the question of whether, and to what extent, a duty of good faith existed necessarily arose from an interpretation of the labor contract, the Court held that the claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law.

The decision in *Allis–Chalmers* may not be inconsistent with the maintenance of a state tort action for retaliatory discharge. Deterrence of the practice of discharging employees for the filing of a worker's compensation claim is a legitimate state interest, and the parties to a labor contract cannot opt out of the operation of a state regulation designed to accomplish that end. As long as the process fixed by the collective bargaining agreement and by § 301 is utilized to determine the issues with respect to the discharge, accomplishment of an important state objective by the allowance of a supplemental remedy would seem appropriate.

The questions of whether the discharge was for good cause, and what the parties meant by good cause, must be resolved through the process dictated by the collective bargaining agreement—grievance proceedings, arbitration, and, if necessary, a § 301 action. That does not mean, however, that an action under State law could never follow. To illustrate but one possibility, if an employee follows the required procedure and is reinstated with back pay and benefits upon a finding that good cause for discharge did not exist, and there are no other issues submitted or determined, a strong argument may be made that a subsequent state tort action for abusive discharge should be permitted. In such case, the findings necessary for the resolution of the grievance would not be disturbed, but rather would serve as a foundation for an additional action which could be successful only if the employee could show that the

motive for discharge was retaliation for the filing of a worker's compensation claim. The state claim would be supplemental, and no possibility would exist that the federal labor-contract scheme established by § 301 would be frustrated. Unless the intent of Congress was to ensure that in every instance the rights, remedies, and obligations of the parties were to be fixed *exclusively* by the contract between the parties, it would appear that total pre-emption of a state claim for retaliatory dishcarge may not be mandated.

■ Though we identify some of the ingredients of the difficult issue of absolute pre-emption, we need not decide that issue to resolve the case before us. A required, but less than absolute pre-emption will suffice.

■ In order to prove his claim of abusive discharge, Petitioner would be required to show that he was discharged without just cause, and in retribution for his earlier filing of a worker's compensation claim. However, a finding that he was discharged without just cause would be inconsistent with the final decision of the arbitrator in this case,[5] and it is manifestly clear that § 301 does not permit such a result. The integrity of the federally-based findings must be preserved, and in this case the proper vehicle is the issue preclusion arm of the doctrine of collateral estoppel.

We recently discussed the preclusive effects of former litigation in *Kent County Bd. of Educ. v. Bilbrough,* 309 Md. 487, 525 A.2d 232 (1987). We have not, however, had

---

5. We recognize that the instant action was filed shortly after the arbitration award was filed, and therefore prior to the time that Petitioner could have filed a § 301 action that might have affected the finality of the award. *See DelCostello v. Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (fixing a six-month period of limitations following arbitration for the bringing of a suit alleging breach of a collective bargaining agreement and breach of the duty of fair representation). However, by the time the employer's motion to dismiss was filed, more than six months had elapsed from the filing of the award. The employer's allegation in the motion that Petitioner had taken no action to modify or vacate the award was not contested, and Judge Ward found that there had been no challenge to the arbitrator's decision.

occasion to address the concept of preclusion of judicial issues by earlier binding arbitration. The general rule suggested by §§ 83 and 84 of the Restatement (Second) of Judgments (1982) is that a valid and final award of arbitration should be given the same res judicata effect as a judgment of a court if the procedure leading to the arbitration award embraced elements of adjudicatory procedure consistent with established principles of due process, and if according preclusive effect would not be incompatible with a legal policy or contractual requirement that the second tribunal be free to make an independent determination. With respect to the procedural requirements of the arbitration proceeding, comment c to § 84 states, in part:

> When the arbitration procedure leading to an award is very informal, the findings in the arbitration should not be carried over through issue preclusion to another action where the issue would otherwise be subjected to much more intensive consideration.
>
> \* \* \* \* \* \*
>
> When arbitration affords opportunity for presentation of evidence and arguments substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has. Economies of time and effort are thereby achieved for the prevailing party and for the tribunal in which the issue subsequently arises.

We need not here decide the extent to which §§ 83 and 84 of the Restatement will be approved for general application in this State. The reach of § 301 of the Labor Management Relations Act is broad enough so that if a state action of the type involved here is permitted at all it is permitted only to the extent that it is compatible with the issues finally litigated in the earlier labor arbitration proceeding, whether that arbitration proceeding was subjected to judicial review or allowed to become final without review. Any other approach would subvert "the congressional goal of a unified federal body of labor-contract law." *Allis–Chalmers, supra,* 471 U.S. at 220, 105 S.Ct. at 1916.

58

## CONCLUSION .

A cause of action for abusive discharge is available to contractual employees as well as to at will employees. Assuming that § 301 of the Labor Management Relations Act does not preclude a union employee from bringing a state tort action for abusive discharge following exhaustion of contract remedies, this case cannot succeed because an essential element of the cause of action was determined adversely to the employee by final arbitration, and the pre-emptive effects of § 301 require that this State accord that finding preclusive effect.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY PETITIONER.

ELDRIDGE, J., concurs in the result only.