James J. PRESTON, Jr.

v.

MOUNTAINSIDE TRANSPORT, INC.

Civ. A. No. WN–91–1845.

United States District Court,
D. Maryland.

March 30, 1992.

David J. Preller, Jr., and Preller & Preller, Towson, Md., for plaintiff.

Jeffrey E. Rockman, and Frank, Bernstein, Conaway & Goldman of Baltimore, Md., and William W. Allport, and Allport & Miller, Cleveland, Ohio, for defendant.

## MEMORANDUM

NICKERSON, District Judge.

Pending before the Court is Defendant's Motion to Dismiss or Alternative Motion for Summary Judgment (Paper No. 7) filed August 21, 1991. The motion is opposed. (Paper No. 11). Upon a review of the pleadings, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion should be granted.

## BACKGROUND

Defendant Mountainside Transport, Inc. ("MTI") is a New Jersey corporation involved in interstate trucking and transportation, and maintains a terminal in Baltimore County. MTI hires truck drivers at its terminals to operate its business. Plaintiff, James J. Preston, Sr. ("Preston"), was employed by MTI as a truck driver at its Baltimore terminal. Truck drivers at the Baltimore terminal of MTI have been represented for purposes of collective bargaining by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 355 ("the Union"), since February of 1986. Plaintiff was a member of the Union during his employment at MTI, and was subject to the terms of the collective bargaining agreement ("CBA") in 1988.

Because MTI drivers engage in interstate commerce, the Department of Transportation ("DOT") has authority to regulate its activities. The DOT requires periodic physicals of MTI drivers, which include testing for drug usage. Plaintiff took such a test on June 6, 1988. On June 16, 1988, MTI was informed that Plaintiff had tested positive for cocaine use. On June 24, 1988, Plaintiff and his Union representative were informed that he had tested positive for cocaine use, and Plaintiff was discharged by MTI on the same day.

Pursuant to the CBA, all disputes that arise under it are to be submitted to the grievance procedure delineated in the agreement at Article 29, § C. Plaintiff filed such a grievance protesting his discharge, arguing that he disagreed with the results of the drug test. Plaintiff's Union processed the grievance through the second step of the contractually mandated grievance procedure, and elected at that point not to pursue the complaint.

On August 12, 1988, Plaintiff filed a charge of discrimination in the Baltimore regional office of the National Labor Relations Board (NLRB) against the Union, alleging that the Union had not properly represented him in the grievance process. After investigating, the NLRB dismissed the charge, finding that the Union's decision not to pursue Plaintiff's grievance was based on "a good faith determination that the grievance lacked merit." Plaintiff did not appeal that finding to the General Counsel of the NLRB.

In June of 1991, Plaintiff filed the instant action in the Circuit Court for Baltimore County, alleging two counts based on state common law: (1) Count I—breach of contract, and (2) Count II—abusive discharge. Defendant removed to this Court on July 2, 1991, pursuant to § 301 of the Labor Management Relations Act, and filed the instant Motion to Dismiss, or in the Alternative for Summary Judgment, on August 21, 1991.

## DISCUSSION

### I. LEGAL STANDARD

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Id.* at 323, 106 S.Ct. at 2552. (citations omitted).

If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986)). Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." *Id.*

Finally, in assessing such a motion, the Court must view the evidence and all justifiable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam).

With these principles in mind, the Court will address the arguments presented by the parties.

## II. ANALYSIS

Count I of Plaintiff's complaint alleges that "Defendant breached the contract between the Defendant and the Plaintiff by discharging the Plaintiff without just cause...." *See* Paper No. 3 at 2. Count II alleges that "Defendant's discharge of the Plaintiff from the Defendant's employ, on the pretext that the Plaintiff had abused narcotics, when in fact the Plaintiff had not performed any such abuse, and when the Defendant knew that the test results ... was [sic] false and erroneous, is a discharge in contravention to public policy, and constitutes an abusive discharge." *See id.* at 3.

Defendant argues that: (1) Plaintiff's action is barred by the statute of limitations applicable to § 301 actions;[1] (2) Plaintiff has failed to allege that his union breached its duty of fair representation; (3) Plaintiff's grievance has already been resolved finally through the grievance process contained in the collective bargaining agreement; and (4) Plaintiff's grievance has been resolved by the National Labor Relations Board in his discrimination action against his union, Case No. 5–CB–6113.

Plaintiff argues in opposition that "he did pursue his remedies with respect to the Union," *see* Paper No. 11 at 2, he has been unable to obtain information regarding the drug testing in question, and that, even if Count I is preempted, Count II states a claim based strictly in Maryland tort law.

### A. Count I

■ Plaintiff's claim in Count I, that MTI breached the CBA by discharging Plaintiff without just cause, requires an interpretation of the CBA term "without just cause." *See* Paper No. 7, Exhibit C, Article 29, § C. Because of this reference to the contract term, Count I is preempted by § 301 of the LMRA. *See Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (holding that if resolution of state-law claim depends on meaning of CBA, application of state law is preempted and federal labor law principles must be employed to resolve dispute). Because the claim is preempted by federal law, and because it is clear that Plaintiff failed to file within the statutorily prescribed time (within 180 days of the alleged breach), *see DelCostello v. Anchor Motor Freight, Inc.,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Court will grant summary judgment as to this claim.[2]

### B. Count II

■ Plaintiff's claim in Count II—that MTI discharged Plaintiff on the pretext that Plaintiff had abused narcotics—is based on Plaintiff's contention that he did not use illicit drugs, that MTI knew that the test results were erroneous, and that MTI's consequent discharge of Plaintiff violated public policy.

In *Childers v. Chesapeake & Potomac Tel. Co.,* 881 F.2d 1259, 1262 (4th Cir.1989), the Fourth Circuit made it clear that the discretion of district courts to address the validity of alleged state-law claims in the course of a preemption inquiry is limited to those state claims whose lack of merit is apparent. The Court there held that:

> Where the plaintiff appears to state a claim under state law, a federal district court would be well-advised to proceed to the § 301 preemption inquiry and, if the

---

1. "Section 301" refers to § 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 61 Stat. 156, codified at 29 U.S.C. § 185(a). That section provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States hav-

ing jurisdiction of the parties, without respect to the amount in the controversy or without regard to the citizenship of the parties.
29 U.S.C. § 185(a).

2. It should be noted that Plaintiff seems to concede preemption. In his opposition, Plaintiff states: "Arguably, Count I of the Plaintiff's Amended Complaint falls under 29 U.S.C. Sec. 185(a)." Paper No. 11 at 5.

state claim is not preempted, to remand the entire action to the state court. Where the complaint, however, plainly fails to state a cause of action under state law, it is open to the federal court to dismiss it.

*Childers,* 881 F.2d at 1262.

In the instant case, the Court concludes that Plaintiff's abusive discharge claim does not state a colorable claim under Maryland state law. Accordingly, the Court will grant summary judgment as to Count II of Plaintiff's complaint prior to reaching the § 301 preemption inquiry.

A cause of action for retaliatory or abusive discharge was first recognized in Maryland in *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981), where the court held that "Maryland does recognize a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy...." *Id.* at 47, 432 A.2d at 473. In that case, though, the court held that the plaintiff's allegations of abusive discharge [3] did not provide "a sufficient factual predicate for determining whether any declared mandate of public policy was violated." *Id.* at 46, 432 A.2d at 472.

The court did find a violation of a clear mandate of public policy, however, in *Ewing v. Koppers Co.,* 312 Md. 45, 50, 537 A.2d 1173, 1175 (1988), which involved a union employee who allegedly had been terminated in retaliation for his having filed a workers' compensation claim. In that case, the Maryland Court of Appeals held:

> "[S]ociety as a whole has an interest in ensuring that its laws and important public policies are not contravened." [*Adler,* 291 Md. at 42, 432 A.2d at 470.] The tort action as we have recognized it is not intended to reach every wrongful discharge. It is applicable only where the discharge contravenes some clear mandate of public policy. Thus, the public policy component of the tort is significant, and recognition of the availability

of this cause of action to all employees, at will and contractual, will foster the State's interest in deterring particularly reprehensible conduct.

*Ewing,* 312 Md. at 49, 537 A.2d at 1175 (citations omitted). In *Ewing,* the public policy which the plaintiff alleged had been violated was the policy against discharge of an employee based solely on that employee's filing a worker's compensation claim, *see id.,* which reason for discharge is statutorily prohibited. *See* Md.Code Ann. Art. 101, § 39A.

In the instant case, Plaintiff has failed to identify specifically what public policy allegedly has been violated by MTI, and he has offered insufficient factual predicates for determining whether any such public policy was in fact violated. Plaintiff has offered no evidence to support his conclusion that the test results were erroneous, and no evidence that MTI knew that the test results were erroneous. The Court finds, therefore, that the complaint "plainly" fails to state a cause of action under Maryland law for abusive discharge, and will grant summary judgment as to Plaintiff's Count II.

A separate order will be entered in accordance with this memorandum.

## ORDER

In accordance with the foregoing Memorandum, and for the reasons stated therein, IT IS this 30th day of March, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant's Motion to Dismiss or Alternative Motion for Summary Judgment (Paper No. 7) filed August 21, 1991, is GRANTED;

2. That judgment is hereby entered in favor of defendant and against plaintiff;

3. That the Clerk of the Court is directed to CLOSE this case.

---

**3.** Adler claimed that he was discharged to prevent him from reporting improprieties and illegal activities in his division to company head-

quarters. *See Adler,* 291 Md. at 34, 432 A.2d at 466.