866 A.2d 895

**Karen Bauries KING**

v.

**MARRIOTT INTERNATIONAL, INCORPORATED.**

**No. 175, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Jan. 27, 2005.

690

Argued by Steven M. Salky (Karen B. Dietrich, Mary I. Peters, Zuckerman, Spaider, L.L.P., Robert B. Fitzpatrick, on the brief), Washington. D.C., for appellant.

Argued by Todd J. Horn (Venable, L.L.P., on the brief), Baltimore, MD, for appellee.

Panel: EYLER, JAMES R., ADKINS, BARBERA, JJ.

JAMES R. EYLER, J.

This appeal arises from a wrongful discharge action brought by Karen Bauries King, appellant, in the Circuit Court for Montgomery County, against her former employer, Marriott International, Incorporated, appellee.[1] Appellant contends that she was terminated from her position in appellee's employee benefits department because she voiced objections to her co-workers and supervisor about the proposed transfer of funds from an employee Medical Plan ("Medical Plan or Plan"), qualified under ERISA,[2] to a general corporate account.

The circuit court entered summary judgment in favor of appellee on the grounds that (1) there is no viable wrongful discharge action under State law because termination of appellant's employment did not violate a clear mandate of public policy; and (2) appellant's State law claim is preempted by ERISA section 514(a). 29 U.S.C. § 1144(a). Appellant argues that these conclusions were erroneous.

We affirm the judgment of the circuit court on the ground that appellant failed to identify a sufficiently compelling public policy violated by the actions of appellee. In light of this conclusion, there is no State law claim to be preempted, and thus, no need to determine whether the doctrine of preemption applies.

## FACTUAL BACKGROUND

For approximately ten years prior to her termination on March 22, 2002, appellant had been employed in various positions in appellee's employee benefits department. In July 1998, Karl I. Fredericks ("Mr. Fredericks") became Senior Vice President for Compensation and Benefits. Appellant, as

1. The complicated procedural history of this case is reviewed below.

2. The Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et. seq.* (1999).

Director of Benefit Operations, reported to him, as did Ms. Maureen Brookbank ("Ms. Brookbank"), Vice President of Benefits Planning & Retirement Plans, and Ms. Sandra Kingsley ("Ms. Kingley"), Controller. In late 1998 or early 1999, appellant learned that Mr. Fredericks and the corporate accounting department planned to transfer funds from an employee Medical Plan reserve account to a general corporate account. Appellant, Ms. Brookbank, and Ms. Kingsley objected to the proposed transfer. Their objections were communicated to Mr. Fredericks. Apparently, no funds were transferred at that time.

In the summer of 1999, Mr. Fredericks reorganized the employee benefits department. As part of that reorganization, Ms. Kingsley voluntarily terminated her employment with appellee. Additionally, on September 11, 1999, Mr. Fredericks promoted appellant to Vice President of Benefit Resources, which included responsibility for employee benefits accounting. During the reorganization, Mr. Fredericks also changed the duties and responsibilities of Ms. Brookbank.

In the fall of 1999, appellant learned that the proposal to transfer funds from the benefits Plan was again being discussed. From October to December, 1999, appellant voiced her objections, verbally and by e-mail, to Mr. Fredericks and to appellee's in-house counsel in charge of employee benefits and compensation issues, Mr. Edward Rosic ("Mr. Rosic"). Appellant believed that the proposed transfer constituted the "illegal" use of Plan assets for corporate purposes. Transfer of the funds, she asserted, would also result in fewer "premium holidays" or "benefits bonuses," which enabled Plan participants to not pay premiums for a certain period of time, during which the cost of their benefits would be paid with Plan assets.

On December 10, 1999, Mr. Fredericks presented appellant and Ms. Brookbank with memoranda indicating that their job performance was unsatisfactory.[3] The memoranda referenced

---

3. The memoranda principally addressed a "feud" between appellant and Ms. Brookbank that stemmed from the division of duties and

an inability by the addressees to work together and indicated that, absent immediate substantial change, adverse employment actions would be taken.

Near the end of 1999, appellee transferred approximately $7.3 million from the Medical Plan reserve account, regarded by in-house counsel as non-Plan assets and "excess reserves," to a general corporate reserve account. Appellant did not have any prior knowledge of the transfer, did not approve the transfer, and did not participate in any way in the transfer of funds.

In early 2000, appellant heard that appellee proposed to utilize an additional sum of money from the Medical Plan reserve account to pay for consulting costs unrelated to the Plan. Again, appellant objected verbally and through e-mail to Mr. Fredericks.

On March 21, 2000, Mr. Fredericks terminated Ms. Brookbank's employment. On March 22, 2000, he terminated appellant's employment. Mr. Fredericks stated he terminated the employment of both persons because of their inability to get along with each other and with the staff.

## PROCEDURAL HISTORY

On March 21, 2001, appellant filed a complaint in the Circuit Court for Montgomery County against appellee and Mr. Fredericks, collectively the "defendants," alleging wrongful discharge and defamation. Defendants removed the case to the United States District Court for the District of Maryland, asserting federal question jurisdiction. Appellant moved to remand the case. The federal district court denied the motion on the grounds that appellant's allegations stated a cause of action under ERISA, and thus, the state law claims were completely preempted by ERISA section 514. 29 U.S.C. § 1132(a).[4]

---

responsibilities after the departmental reorganization in the fall of 1999.

4. Under ordinary conflict preemption, state laws that conflict with federal laws are preempted, and preemption is asserted as a federal

Appellant filed an amended complaint, which included a claim for wrongful discharge under State law, but also contained additional counts, including an alleged violation of ERISA section 510.[5] 29 U.S.C. § 1140. Defendants filed a

---

defense to the plaintiff's suit. *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 187–88 (4th Cir.2002). Because preemption arises as a defense, it does not appear in the plaintiff's well-pleaded complaint. *Id.* (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). Ordinary preemption also does not justify removal to a federal court because the issues in the case do not "arise under" federal law as required by 28 U.S.C. § 1331. *See King v. Marriott International, Inc.*, 337 F.3d 421, 424-25 (4th Cir. 2003). Thus, when ordinary preemption is asserted as a defense to a State law claim, the State claim is not converted into a federal claim, and there is no federal question giving rise to removal jurisdiction.

In the case of complete preemption, also called field preemption, Congress "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Taylor*, 481 U.S. at 63–64, 107 S.Ct. 1542. When Congress intends the federal cause of action to be the exclusive remedy for the type of claim brought by a plaintiff, the federal statute completely sweeps away state law, transforming the suit into a federal action that can be brought originally in, or removed to, federal court. *See King*, 337 F.3d at 425; *Beneficial National Bank v. Anderson*, 539 U.S. 1, 2, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003); *Taylor*, 481 U.S. at 63, 107 S.Ct. 1542. The doctrine of complete preemption serves as a corollary to the well-pleaded complaint rule: because the State claims in the complaint are converted into federal claims, the federal claims appear on the face of the complaint. *Taylor*, 481 U.S. at 63-65, 107 S.Ct. 1542.

When a plaintiff brings a State law claim that is completely preempted by a federal statute, the court "should not dismiss the claim as preempted, but should treat it as a federal claim...." *King*, 337 F.3d at 425 (quoting *Darcangelo*, 292 F.3d at 195). Courts have found that ERISA does completely preempt many State law claims. *King*, 337 F.3d at 425. Thus, when a complaint contains State law claims that fit within the scope of ERISA's § 502 civil enforcement provision, those claims are converted into federal claims, and the action can be removed to federal court. In this case, however, the Fourth Circuit Court of Appeals specifically found that appellant's claims were not completely preempted by ERISA. *Id.* at 426–428.

5. The counts were (1) wrongful discharge in violation of ERISA section 510; (2) sex discrimination in terminating employment in violation of Title V;(3) sex discrimination in wages in violation of Title VII; (4) violation of the federal Equal Pay Act; (5) sex discrimination in terminating employment in violation of the Montgomery County Code; (6) sex discrimination in wages in violation of the Montgomery County Code; (7) violation of the Maryland Equal Pay Act; (8) wrongful discharge; (9) breach of implied contract; and, (10) defamation.

motion to dismiss the amended complaint. In denying defendants' motion to dismiss, the federal district court revisited the question of whether appellant's wrongful discharge claim was completely preempted by ERISA. The federal district deferred deciding the issue until after discovery.

Subsequent to discovery, defendants filed a motion for summary judgment. Defendants' motion was granted. With respect to the counts alleging wrongful discharge and a violation of ERISA, the court granted defendants' motion on the ground that there was no evidence to establish causation between appellants' objections to the transfer of funds and termination of her employment.

Appellant appealed to the United States Court of Appeals for the Fourth Circuit, contending that the federal district court erred by concluding that her wrongful discharge claim was completely preempted by ERISA section 514, 29 U.S.C. § 1144 and, thus, by denying her motion to remand. The Fourth Circuit agreed with appellant and vacated the federal district court's decision, holding (1) that ERISA does not provide a cause of action, assuming the truth of appellant's assertions, and as a consequence, (2) that appellant's State law wrongful discharge claim was not completely preempted. The Fourth Circuit expressly did not rule on whether the claim was subject to ordinary preemption under ERISA section 514. 29 U.S.C. § 1144.

The case was remanded to the Circuit Court for Montgomery County. On November 14, 2002, appellant filed an amended complaint, the one before us, in which she alleged only a State law wrongful discharge claim against appellee. The circuit court entered summary judgment in favor of appellee on the grounds that (1) the wrongful discharge claim was not viable under State law because no specific mandate of public policy was violated and (2) the wrongful discharge claim was preempted by ERISA section 514(a). 29 U.S.C. § 1144(a). Appellant noted a timely appeal to this Court.

## STANDARD OF REVIEW

This case comes to us on a motion for summary judgment, and our review shall be *de novo*. Whether appellant has satisfied her burden of proving that her termination violated a compelling mandate of public policy, is a question of law. *See Wholey v. Sears Roebuck*, 370 Md. 38, 48, 803 A.2d 482 (2002) (citing *Register of Wills for Balt. County v. Arrowsmith*, 365 Md. 237, 249, 778 A.2d 364 (2001); *Watson v. Peoples Security Life Ins. Co.*, 322 Md. 467, 478, 588 A.2d 760 (1991)). If appellant failed to state a claim upon which relief can be granted, then it was appropriate for the trial court to grant summary judgment in favor of appellee. As appellant was the non-moving party below, we shall assume the truth of appellant's factual assertions and view the evidence in the light most favorable to her. *See Wholey*, 370 Md. at 46, 803 A.2d 482.

## DISCUSSION

### *Wrongful Discharge Generally*

 An at will employee, such as appellant, has an employment contract of infinite duration which is terminable for any reason by either party. *See Suburban Hosp. v. Dwiggins*, 324 Md. 294, 303, 596 A.2d 1069 (1991); *Adler v. American Standard Corp.*, 291 Md. 31, 35, 432 A.2d 464 (1981); *Bagwell v. Peninsula Regional Medical Center*, 106 Md.App. 470, 494–95, 665 A.2d 297 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996) (citations omitted). As the Court of Appeals recently reaffirmed,

> In the at-will employment context, we have held that a jury may not review any aspect of the employer's decision to terminate and that the employer may, absent a contravening public policy terminate an employer [sic] for any reason, even a reason that is arbitrary, capricious, or fundamentally unfair.

*Towson University v. Conte*, 384 Md. 68, 82, 862 A.2d 941 (2004). The tort of wrongful discharge is a narrow exception to this well-established principle. *See Adler*, 291 Md. at 35,

432 A.2d 464; *see also Ewing v. Koppers Co. Inc.*, 312 Md. 45, 49, 537 A.2d 1173 (1988)(holding that the tort of wrongful discharge is also available to contractual employees).

In order to establish wrongful discharge, the employee must prove by a preponderance of the evidence, that (1) she was discharged; (2) her discharge violated a clear mandate of public policy; and, (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See Wholey*, 370 Md. at 50–51, 803 A.2d 482; *Shapiro v. Massengill*, 105 Md.App. 743, 764, 661 A.2d 202 (1995), *cert. denied*, 341 Md. 28, 668 A.2d 36 (1995) (citing *Leese v. Baltimore County*, 64 Md.App. 442, 468, 497 A.2d 159 (1985), *cert. denied*, 305 Md. 106, 501 A.2d 845 (1985)).

Viewing the facts in the light most favorable to appellant, she was fired because she voiced objections to co-employees and supervisors, as described above. Appellant alleges that she objected to the proposed funds transfer because she suspected the transfer would constitute a breach of fiduciary duties owed to Medical Plan participants. Because the circuit court reached its conclusion based upon its determination that appellant failed to identify a clear mandate of public policy that was violated by her termination, we shall focus on this issue in our analysis.

### Public Policy Element of Wrongful Discharge Action

A public policy is a "principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good." *Adler*, 291 Md. at 45, 432 A.2d 464. Maryland courts have found a violation of a clear mandate of public policy only under very limited circumstances: where an employee has been fired for refusing to violate the law or the legal rights of a third party,[6] and where an employee has been terminated for exer-

---

6. *See Kessler v. Equity Management, Inc.*, 82 Md.App. 577, 572 A.2d 1144 (1990)(holding that employee could not be fired for refusal to commit the tort of invasion of privacy).

cising a specific legal right or duty.[7] Ordinarily, as the case law illustrates, the public policy must be reasonably discernible from statutory or constitutional mandates.[8] Maryland

---

**7.** *See Insignia Residential Corp. v. Ashton*, 359 Md. 560, 755 A.2d 1080 (2000) (finding a cause of action for employee who was terminated after refusing to acquiesce in "quid pro quo" sexual harassment); *Molesworth v. Brandon*, 341 Md. 621, 672 A.2d 608 (1996) (applying public policy defined by statute even though the statute did not apply to plaintiff's employer who had less than 15 employees); *Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 588 A.2d 760 (1991) (deciding that employee could not be fired for seeking legal redress from co-worker for sexual-harassment); *Ewing*, 312 Md. 45, 537 A.2d 1173 (1988) (concluding that employee could not be fired for filing worker's compensation claim); *De Bleecker v. Montgomery County*, 292 Md. 498, 438 A.2d 1348 (1982) (deciding that wrongful discharge action will lie for terminating an employee for exercising his First Amendment rights); *Bleich v. Florence Crittenton Servs. of Baltimore, Inc.*, 98 Md.App. 123, 632 A.2d 463 (1993) (permitting a wrongful discharge claim for employee fired after fulfilling a statutory duty to report child abuse or neglect); *Moniodis v. Cook*, 64 Md.App. 1, 494 A.2d 212 (1985), *cert. denied*, 304 Md. 631, 500 A.2d 649 (1985) (finding a viable cause of action where employee was fired for his refusal to take a lie detector test); *see also Porterfield v. Mascari II, Inc.*, 374 Md. 402, 823 A.2d 590 (2003) (deciding that the right to seek counsel for matters related to one's employment was not a sufficiently established public policy to support a wrongful discharge claim); *Wholey*, 370 Md. 38, 803 A.2d 482 (2002) (declining to find a sufficiently compelling public policy to protect an employee who made internal reports of corporate wrongdoing, instead of reporting the illegal activities to the proper authorities); *Milton v. ITT Research Inst.*, 138 F.3d 519 (4th Cir.1998)(holding that expressing concerns over company's alleged abuse of tax exempt status to supervisors and board of directors was not protected activity under Maryland's wrongful discharge jurisprudence); *Adler v. American Standard Corp.*, 830 F.2d 1303 (4th Cir.1987) (concluding that the discharge of an employee based on his intention to reveal supervisory illegalities to higher corporate officers did not violate public policy).

**8.** Public policy mandates supporting wrongful discharge claims have been found in both Maryland and federal statutes, regulations, and to the extent consistent, the common law. *Porterfield*, 374 Md. at 422–28, 823 A.2d 590; *Wholey*, 370 Md. at 53–56, 803 A.2d 482; *see Ashton*, 359 Md. at 573, 755 A.2d 1080 (Md.Code Art. 27 § 15 (repealed 2001)); *Molesworth*, 341 Md. at 630–637, 672 A.2d 608 (Md. Code, Art. 49B § 14 (Fair Employment Practices Act)); *Watson*, 322 Md. at 482, 588 A.2d 760 (Md.Code (1957, 1987 Repl.Vol., 1990 Cum.Supp.) Art. 27, § 464C); *Ewing*, 312 Md. at 48, 50, 537 A.2d 1173 (Maryland Code (1957, 1982 Repl.Vol.) Article 101, §§ 39A(now Labor and Employment § 9–1105)); *Bleich*, 98 Md.App. at 135, 632 A.2d 463 (Md.Code §§ 5–502(b), 5–702(1), 5–704(a) of the Family Law Article); *Kessler*, 82

courts have stated that in order for a public policy to be considered sufficiently established to form the basis of a wrongful discharge action,

> there must be a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the Maryland public policy on the topic not a matter of conjecture or even interpretation.

*Sears, Roebuck & Co. v. Wholey*, 139 Md.App. 642, 661, 779 A.2d 408 (2001), *cert. granted*, 367 Md. 88, 785 A.2d 1292 (2001), *aff'd*, 370 Md. 38, 803 A.2d 482 (2002). By requiring that there be a demonstrable mandate, Maryland "limits judicial forays into the wilderness of discerning 'public policy' without clear direction from a legislature or regulatory source." *Milton*, 138 F.3d at 523. Such unguided forays are

---

Md.App. at 586, 587 n. 2, 572 A.2d 1144 (Md.Code, Art. 101, § 39A(a); Montgomery County Code §§ 29–26(q); Md.Code §§ 8–301 through 8–332, 8–401. of the Real Property Article); *Moniodis*, 64 Md.App. at 10, 494 A.2d 212 (Md.Code (1957) Art. 100, § 95); *see also Porterfield*, 374 Md. at 433, 823 A.2d 590 (Md.Code (1957, 2000 Repl.Vol.), Art. 10, § 45B); *Wholey*, 370 Md. at PC (Md.Code Art. 27, §§ 760–762 (now Crim. Law §§ 9–301 to 9–304)).

Constitutional principles have also provided clear public policy mandates. See, e.g., *Porterfield*, 374 Md. at 432–33, 823 A.2d 590 (Md. Decl. of Rights, Art. 21, 24); *De Bleecker*, 292 Md. at 500, 438 A.2d 1348 (U.S. Const.amend.I); *Bleich*, 98 Md.App. at 134–35, 632 A.2d 463 (U.S. Const. amend. I; Md. Decl. of Rights, Art. 40); *Kessler*, 82 Md.App. at 588–89, 572 A.2d 1144 (U.S. Const.amend.4).

It is not necessary that the statute or regulation declaring the public policy apply directly in the case in which it is argued. A public policy that is clearly demonstrated by a statute or regulation may be considered so long as it is relevant to the conduct at issue in the case. *See Porterfield*, 374 Md. at 431, 823 A.2d 590 (2003)(noting "[b]oth *Wholey* and *Molesworth* involved situations where the public policy was enunciated clearly in the relevant statutes, and applied narrowly to sets of circumstances beyond the express scope of the statutes"); *Molesworth*, 341 Md. at 628, 672 A.2d 608 (holding that though plaintiff's employer was technically exempt from the statute in question, the employer was still subject to the public policy that was demonstrated in the statute); *Wholey*, 370 Md. at 59, 803 A.2d 482 (finding a generally applicable public policy was declared by a section of the criminal code not at issue in the case).

to be avoided by the judiciary, as they are more properly the province of the legislative branch. *Adler,* 291 Md. at 45, 432 A.2d 464.

Appellant contends that it is the public policy of Maryland that all fiduciaries must act in favor of their beneficiaries. This duty extends, appellant argues, to fiduciaries of employee benefit plans, who must act in the interest of plan participants and not in the interest of a corporate sponsor. Appellant argues that terminating her employment for fulfilling her duty to the Plan beneficiaries was sufficiently egregious to support an action for wrongful termination.

Appellant concedes that a plan administrator's fiduciary duty to protect the interest of beneficiaries has never been recognized as a sufficiently compelling public policy upon which a wrongful termination action could be based. In order to create a cause of action for appellant, this Court would be required to recognize and define a new public policy exception to the employment at will doctrine. This is a step we will not take without carefully measured consideration.

### *Appellant's Pleadings Are Insufficient to Establish Wrongful Discharge*

First we must note that in her amended complaint, appellant fails to meet the requirement that she "plead with particularity the source of the public policy" allegedly violated by her termination. *Porterfield v. Mascari II, Inc.,* 142 Md.App. 134, 140, 788 A.2d 242 (2002), *cert. granted,* 369 Md. 179, 798 A.2d 551 (2002), *aff'd,* 374 Md. 402, 823 A.2d 590 (2003) (citing *Watson,* 322 Md. at 477, 588 A.2d 760; *Lee v. Denro, Inc.,* 91 Md.App. 822, 831–32, 605 A.2d 1017 (1992)). In her complaint, appellant states, without citation to any case, statute, or regulation,

Maryland has recognized a clear mandate of public policy encouraging administrators and fiduciaries of employee benefit plans to refuse to participate in and to object to transactions which are proposed by the plan sponsor for its benefit and not in the interests of the plan participants.

Plaintiff has, therefore, failed to meet the threshold requirement for stating a cause of action for wrongful discharge that she identify the source of the public policy with particularity.

### *Appellant Fails to Establish Her Termination Violated a Compelling Public Policy Mandate*

Even if appellant had pled her case with particularity, her claim would still fail. In her brief, appellant relies on four legal sources to establish the public policy that she contends creates an exception to the employment at will doctrine: (1) Title 8 of the Maryland Insurance article, (2) Title 15 of the Maryland Estates and Trusts article, (3) State common law, and (4) ERISA. None of these sources provides a sufficiently compelling public policy mandate to support a wrongful discharge action.

In our view, the Court of Appeals' decision in *Wholey v. Sears Roebuck,* 370 Md. 38, 803 A.2d 482 (2002), governs the outcome of this case. In *Wholey,* an employee was discharged from employment for investigating and reporting to his supervisor suspected criminal activity of a co-employee. *Id.* at 45–46, 803 A.2d 482. The issue was whether the employee had a cause of action for wrongful discharge. *Id.* at 46, 803 A.2d 482. The Court filed a plurality opinion (Battaglia, J; Cathell, J; Harrell, J) recognizing a new public policy exception to the employment at will doctrine, stating that an employee who was fired for reporting illegal activities to the proper authorities could bring a viable claim under the wrongful discharge doctrine. *Id.* at 70, 803 A.2d 482. Judge Battaglia, writing for the plurality, concluded that the exception did not apply to the employee in the case, however, because all of the employee's allegations had been made to supervisors and co-workers who were internal to the company, not to the police or another enforcement agency. *Id.* A concurring opinion reached the same conclusion, without recognizing the new exception created in the plurality opinion. *Wholey v. Sears Roebuck,* 370 Md. 38, 71–76, 803 A.2d 482 (2002) (JJ. Raker and Wilner concurring in the judgment). A dissenting opinion was also filed.

*Wholey v. Sears Roebuck,* 370 Md. 38, 76–77, 803 A.2d 482 (2002) (JJ. Eldridge and Bell dissenting).

Essentially, the plurality of the *Wholey* court simultaneously recognized a new mandate of public policy to protect employees who reported corporate wrongdoing to outside authorities like the police, and declined to recognize a public policy in favor of employees who reported corporate wrongdoing to internal authorities like supervisors. *See id.* at 70, 803 A.2d 482. We will utilize the reasoning expressed in the plurality opinion in *Wholey* to determine if there is an identifiable public policy applicable to the case at bar.

The *Wholey* plurality observed that the purpose of the tort of wrongful discharge, *i.e.,* to provide a remedy for an otherwise unremedied violation of public policy, defined the first limiting factor in recognizing a new public policy. *Id.* at 52, 803 A.2d 482. When a statutory cause of action is available to redress the injuries of an employee, wrongful discharge is not an appropriate remedy, and no public policy need be recognized. *Id.* at 52, 803 A.2d 482. Only if no statutory remedy exists, might wrongful discharge be an appropriate remedy. *Id.*

If we examine each of the sources of law advanced by appellant as declaring an applicable public policy, we find that the duties created by the first three sources provide no cause of action for someone in appellant's position, and define only general duties. The Insurance Article of the Maryland Code outlines fiduciary duties applicable to administrators of employee benefit plans. Md.Code (1957, 2003 Repl.Vol.) §§ 8–310, 8–316 of the Insurance Article. The Insurance Article also imposes civil and criminal penalties on benefit plan administrators who violate their statutorily prescribed duties. Md.Code (1957, 2003 Repl.Vol.) §§ 8–321, 8–322 of the Insurance Article. These statutes only apply, however, to third-party administrators of employee benefits plans, not to in-house administrators of the plan sponsor. Md.Code (1957, 2003 Repl.Vol.) § 8–301(b)(2)(i)(1) of the Insurance Article. Therefore, this statute does not provide any cause of action for

an employee in appellant's position, but may still be considered as a general expression of public policy. *See Molesworth,* 341 Md. at 628, 672 A.2d 608.

 The Estates and Trusts article recognizes the general fiduciary duties applicable to trustees, personal representatives, guardians, and others. *See* Md.Code (1957, 2001 Repl. Vol., 2004 Cum. Supp.) § 15–101, *et seq.* of the Estates and Trusts Article. Appellant contends that an employee benefit plan is a trust under Md.Code (1957, 2003 Repl.Vol.) § 8–301(f) of the Insurance Article, and that as a fiduciary, she had a responsibility to "administer [the] trust ... impartially, based on what is fair and reasonable to all of the beneficiaries." Md.Code (2000, 2001 Rep. Vol., 2004 Cum.Supp.) § 15–502(b) of the Estates and Trusts Article. The duties recited in the Estates and Trusts article are general duties and provide appellant no specific remedy. These statutes, too, can be considered as a general expression of public policy. *See Molesworth,* 341 Md. at 628, 672 A.2d 608.

 Although it is doubtful that common law, standing alone, can form the basis for a public policy mandate, to the extent that it can be a source, the common law of Maryland recognizes that a fiduciary owes a duty of loyalty to a beneficiary. *See Board of Trustees of Employees' Retirement System of City of Baltimore v. Mayor & City Council of Baltimore City,* 317 Md. 72, 109, 562 A.2d 720 (1989) (listing Maryland cases discussing the duty of loyalty owed by trustees to beneficiaries). Again, these are only general duties and provide appellant no remedy under the common law.

 ERISA section 510, 29 U.S.C. § 1140, provides a remedy for employees who are terminated for reporting corporate wrongdoing to the proper authorities. *Id.* It does not provide protection for intra-employment conduct, and thus, as the Fourth Circuit Court of Appeals decided, it does not provide a remedy to appellant. *See King,* 337 F.3d at 428.

To be actionable, however, we must find that a compelling public policy was violated by the employee's termination.

*Wholey* at 50–51, 803 A.2d 482. We examine existing constitutional and statutory mandates to discern those public policies that are sufficiently well established. *See id.* at 53–54, 803 A.2d 482. The plurality in *Wholey* concluded that the general duty to prevent crime for the "public good" was only a general duty and, therefore, was insufficient to support a claim for wrongful discharge. *Id.* at 65–66, 803 A.2d 482. We perceive no difference between the general duty to report suspected criminal activity and the general duty of loyalty required of a fiduciary.

We must focus instead on the appellant's act of reporting the alleged violation to co-workers and supervisors.[9] In *Wholey,* the plurality saw fit to distinguish between internal and external reports of corporate wrongdoing. *Id.* at 70, 803 A.2d 482. The same dichotomy exists here. While we recognize that there is a general policy in Maryland that a fiduciary must serve the interests of the beneficiaries, we do not find any policy that protects a fiduciary who makes an internal complaint of corporate wrongdoing to co-workers and supervisors. In addition to not providing a cause of action, the State law relied on by appellant does not contain an express statement of public policy in favor of protecting a person who objects, internal to employment, to proposed action on the ground that the person suspects a violation of fiduciary duty. Similarly, ERISA contains no statement in favor of protecting such conduct. Therefore, appellant has failed to identify a sufficiently compelling public policy mandate to support her claim of wrongful discharge.

Appellant attempts to distinguish *Wholey* by arguing that she had a specific fiduciary duty to act solely in the best interest of the Plan beneficiaries, the breach of which could subject her to personal liability. The *Wholey* plurality recognized that an employee "may have a viable claim of wrongful discharge if terminated for acting pursuant to a legal duty . . .

---

9. The conduct in this case consisted of objecting to proposed action. Appellant does not allege that she was ordered to perform an illegal act and was discharged for refusing to perform it.

when the employee's failure to perform that duty could result in potential liability." *See id.* at 64, 803 A.2d 482. For example, an employee may have a viable claim for wrongful discharge if the employee is terminated for reporting an activity that the employee is specifically required by law to report, *see Thompson v. Memorial Hosp.*, 925 F.Supp. 400, 407–8 (D.Md.1996) (finding that the duty to report illegal actions of the hospital was the duty of hospital and not the employee; therefore, the employee could not claim protection from wrongful discharge); *Bleich*, 98 Md.App. at 138–40, 632 A.2d 463 (recognizing wrongful discharge of teacher who was terminated for filing a legally required report of child abuse), or for failing to report an activity that the employee is specifically required by law to keep confidential. *See Shapiro*, 105 Md.App. at 766–70, 661 A.2d 202 (discussing whether employee's termination for refusing to read and disclose the contents of the private papers of others was protected under wrongful discharge doctrine). Appellant points to provisions of ERISA as the source of her duty and potential liability. Ignoring the issues of preemption that this argument raises, it does not form the basis for a State cause of action in any event. Again, the problem appellant faces is that there is no specific legal requirement that appellant report suspected activity to her employer and no express statement of protection with respect to reports internal to employment.

Appellant's inability to identify a clear mandate of public policy renders her claim for wrongful discharge untenable. We find no error in the circuit court's findings or conclusions. Therefore, we affirm the circuit court's decision to grant appellee's motion for summary judgment.

### Preemption of State Law Claims

In light of our conclusion that appellant has failed to state a wrongful discharge claim upon which relief can be granted, there is no State law claim to be preempted. Thus, we need not determine whether the doctrine of preemption applies.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.